IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHRISTEL RAMOS,<br><br>Plaintiff, | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| vs. | |
| COUNTRYWIDE BANK, FSB,<br><br>Defendant. | Case No. 2:09-CV-449 TS |

This matter is before the Court on Defendant's Motion to Dismiss.  For the reasons discussed below, the Court will grant the Motion.

## I.  STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[1]   Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[2]   All well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving

---

[1]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[2]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547(2007) (dismissing complaint where Plaintiffs "have not nudged their claims across the line from conceivable to plausible").

1

party.[3]  But, the court "need not accept conclusory allegations without supporting factual averments."[4]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5]  The Supreme Court has explained that a plaintiff must "nudge[ ][his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss.[6]  Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.[7]

The Supreme Court recently explained the standard set out in *Twombly* in *Ashcroft v. Iqbal*.[8]  In *Iqbal*, the Court reiterated that while Fed.R.Civ.P. 8 does not require detailed factual allegations, it requires "more than unadorned, the-defendant-unlawfully-harmed-me accusation[s]."[9]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

---

[3]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4]*Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[5]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[6]*Id*.

[7]*The Ridge at Red Hawk, LLC  v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[8]556 U.S. ___, 129 S.Ct. 1937 (2009).

[9]*Id*. at 1949.

elements of a cause of action will not do.'"[10] "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"[11]

The Court in *Iqbal* stated:

> Two working principles underlie our decision in *Twombly*. First, the tenet
> that a court must accept as true all of the allegations contained in a complaint is
> inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements, do not suffice. Rule 8 marks a
> notable and generous departure from the hyper-technical, code-pleading regime of
> a prior era, but it does not unlock the doors of discovery for a plaintiff armed with
> nothing more than conclusions. Second, only a complaint that states a plausible
> claim for relief survives a motion to dismiss. Determining whether a complaint
> states a plausible claim for relief will . . . be a context-specific task that requires
> the reviewing court to draw on its judicial experience and common sense. But
> where the well-pleaded facts do not permit the court to infer more than the mere
> possibility of misconduct, the complaint has alleged—but it has not
> show[n]—that the pleader is entitled to relief.

> In keeping with these principles a court considering a motion to dismiss
> can choose to begin by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth. While legal conclusions
> can provide the framework of a complaint, they must be supported by factual
> allegations. When there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly give rise to an
> entitlement to relief.[12]

## II.  FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for the

purposes of this Motion.

On or about August 30, 2007, Defendant Countrywide made a loan to Plaintiff in the

amount of $286,505.00 secured by a Deed of Trust against Plaintiff's home in Eagle Mountain,

---

[10]*Id*. (quoting *Twombly*, 550 U.S. at 555).

[11]*Id*. (quoting *Twombly*, 550 U.S. at 557).

[12]*Id*. at 1949-50 ( internal quotation marks and citations omitted).

Utah.  The loan documents and Deed of Trust were initially made in the name of Security

National Mortgage Company.  The beneficiary interest under the Deed of Trust was then

assigned to Defendant Countrywide.

Plaintiff's Complaint alleges: (1) violations of the Truth in Lending Act; (2) state claim

for rescission; (3) fraud and conspiracy to defraud; (4) negligence; (5) intentional infliction of

emotional distress; (6) wrongful notice of foreclosure; and (7) injunctive relief.  Defendant now

moves to dismiss each of Plaintiff's causes of action.

III.  DISCUSSION

A.      TRUTH IN LENDING ACT

Plaintiff alleges that Defendant failed to make certain disclosures under the Truth in

Lending Act ("TILA") and that she is entitled to rescind the loan transaction and obtain damages.

Plaintiff further alleges that her mortgage "was other than a residential mortgage transaction."[13]

Defendant moves for dismissal of Plaintiff's TILA claims, asserting that TILA does not apply to

this loan and that Plaintiff's claims are barred by the statute of limitations.

15 U.S.C. § 1635(a) sets out TILA's right to rescind:

[I]n the case of any consumer credit transaction . . . in which a security interest,
including any such interest arising by operation of law, is or will be retained or
acquired in any property which is used as the principal dwelling of the person to
whom credit is extended, the obligor shall have the right to rescind the transaction
until midnight of the third business day following the consummation of the
transaction or the delivery of the information and rescission forms required under
this section together with a statement containing the material disclosures required
under this subchapter, whichever is later, by notifying the creditor, in accordance
with regulations of the Board, of his intention to do so. The creditor shall clearly
and conspicuously disclose, in accordance with regulations of the Board, to any
obligor in a transaction subject to this section the rights of the obligor under this
section. The creditor shall also provide, in accordance with regulations of the

_____

[13]Docket No. 1, at 3.

4

Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

TILA exempts "residential mortgage transactions" from the rescission provisions of 15 U.S.C. § 1635.[14]  A "residential mortgage transaction" is defined as "a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."[15]

Here, the transaction at issue is a residential mortgage transaction because the loan was obtained to finance the acquisition of Plaintiff's dwelling.[16]  Therefore, § 1635 is not applicable. A number of courts,[17] including this one,[18] have so held.

Plaintiff argues that her right to rescind arises under 15 U.S.C. § 1635(i), which provides for a right of rescission in foreclosure actions under certain circumstances.  However, this provision does not apply because the right of rescission contained in 15 U.S.C. § 1635—which necessarily includes § 1635(i)—does not apply to "residential mortgage transactions."[19]  As set

---

[14]*Id*. § 1635(e)(1).

[15]*Id*. § 1602(w).

[16]*See* Docket No. 1, at ¶ 7.

[17]*See, e.g., Betancourt v. Countrywide Home Loans, Inc.*, 344 F.Supp. 2d 1253, 1261 (D. Colo. 2004) ("[T]here is no statutory right or rescission . . . where the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the customer resides or expects to reside.") (citing cases).

[18]*See Grealish v. Am. Brokers Conduit*, 2009 WL 2992570, *2 (D. Utah Sept. 16, 2009).

[19]15 U.S.C. § 1635(e)(1).

forth above, based on the facts set forth in Plaintiff's Complaint, this is a residential mortgage transaction.  Therefore, Plaintiff's claims under the Truth in Lending Act fail as a matter of law.

B.      RESCISSION

Plaintiff also brings a pendent state law claim for rescission.  "Rescission is a restitutionary remedy that attempts to return parties to the status quo."[20]  "To rescind a partially executed contract, the party seeking rescission usually must be able to place the other party in the same position that existed before the execution of the contract."[21]  "'Generally, if the parties cannot be put back in statu quo, a contract can be rescinded only where the clearest and strongest reason and equity imperatively demand it.'"[22]

Here, there is no allegation that Plaintiff is able to return the money loaned to her by Defendant.  Therefore, there is no ability to return the parties to the status quo.  As a result, rescission is only available in limited circumstances, which are not present here.

Plaintiff argues that under TILA, she need only provide the Notice of Rescission to Defendant and need not immediately tender the money loaned to her.  Rather, Plaintiff argues, that under TILA, the next step is for Defendant to return all the funds that it has received from her.  However, as discussed above, TILA's rescission provisions do not apply to this residential mortgage transaction.  Therefore, Plaintiff's reliance on TILA is unavailing.

---

[20]*Anderson v. Doms*, 75 P.3d 925, 928 (Utah Ct. App. 2003).

[21]*50 West Broadway Assocs. v. Redevelopment Agency of Salt Lake City*, 784 P.2d 1162, 1170 (Utah 1989).

[22]*Id*. (quoting 17Am.Jur.2d Contracts § 514, at 998 (1964)).

Plaintiff also seeks rescission based on mutual mistake.  Plaintiff claims that at the time of the loan transaction, both Plaintiff and Defendant believed that the property had a value of $293,000 and that now the property has a value of less than $150,000.

"To serve as a basis for voiding a contract, the mutual mistake must concern a past or existing fact, not a future contingency."[23]  "'If the parties harbor only mistaken expectations as to the course of future events and their assumptions as to facts at the time of the contract are correct, rescission is not proper.'"[24]  Here, Plaintiff does not allege a past or existing fact about which both parties were mistaken.  The only mistake is Plaintiff's mistaken expectation as to the future value of her property.  Therefore, rescission is not appropriate on the basis of mutual mistake.

C.    FRAUD AND CONSPIRACY

Plaintiff's third cause of action alleges fraud.

[I]n order to prevail on a claim of fraud, all the elements of fraud must be established by clear and convincing evidence.  Those elements are: (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representer either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.[25]

Because Plaintiff's claim alleges fraud it must meet the requirements of Fed.R.Civ.P. Rule 9(b).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "Simply stated, a complaint must 'set for the time, place and contents of the false representation, the identity of the party making

---

[23]*Deep Creek Ranch, LLC v. Utah State Armory Bd.*, 178 P.3d 886, 890 (Utah 2008).

[24]*Id.* (quoting *Mooney v. GR & Assocs.*, 746 P.2d 1174, 1178 (Utah Ct. App. 1987)).

[25]*Secor v. Knight*, 716 P.2d 790, 794 (Utah 1986) (citations omitted).

the false statements and the consequences thereof.'"[26]  "Rule 9(b) requires that a plaintiff set

forth the who, what, when, where and how of the alleged fraud."[27]

Plaintiff's Complaint makes vague and conclusory allegations that Defendant conspired

with its employees and agents to defraud Plaintiff by providing her a loan for which she did not

qualify in order to inflate the value of Defendant's loan portfolio.  Plaintiff alleges that at the

time the loan was made, the value of the property was inflated by Defendant's agents and that it

exceeded the market value of the property at the time.  Plaintiff further alleges that Defendant did

not perform any meaningful or reasonable verification, assessment and evaluation of information

necessary for loan approval.  Plaintiff claims that Defendant made no effort to determine her

ability to repay the loan.

Plaintiff claims that in furtherance of this "fraudulent scheme," Defendant's agents

engaged in unlawful and criminal activities, including falsifying and fabricating verification of

deposits, employment, and credit reports in order to enable Plaintiff to qualify for the home.  In

exchange, Plaintiff alleges that Defendant's agents were paid a fee for their participation.

Plaintiff states that she "has discovered that Countrywide's fraud and conspiracy to defraud is

wide spread and the evidence clearly demonstrates a pattern and practice that was prevalent

throughout Countrywide's nationwide mortgage practice."[28]

---

[26]*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

[27]*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quotation marks and citation omitted).

[28]Docket No. 1, at ¶ 36.

The Court finds that Plaintiff's allegation are insufficient to state a claim for fraud. Plaintiff's allegations are the same type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]"[29] recently rejected by the Supreme Court.  They are merely "'naked assertion[s]' devoid of 'further factual enhancement.'"[30] Those facts which are alleged do not nudge Plaintiff's claims across the line from conceivable to plausible.  As a result, they do not meet the requirements of Fed.R.Civ.P. 8.  Nor do these broad, vague, and conclusory allegations meet the stricter requirements of Rule 9(b).

Turning to Plaintiff's conspiracy claim, under Utah law Plaintiff must show five elements in order to prove a civil conspiracy: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result thereof.[31]  For the same reasons set forth above in relation to Plaintiff's fraud claims, Plaintiff's Complaint fails to sufficiently plead a conspiracy claim.

D.     NEGLIGENCE

Plaintiff's negligence claim essentially asserts that Defendant was negligent in allowing Plaintiff to take out a loan that she applied for.  In order to prevail on her negligence claim, Defendant must owe Plaintiff a duty.[32]  Here, there is nothing in the Complaint to suggest that Defendant owed Plaintiff a duty.  Further, in Utah generally no fiduciary relationship exists

---

[29]*Id*. at 1949.

[30]*Iqbal*, 129 S.Ct. at 1249 (quoting *Twombly*, 550 U.S. at 557).

[31]*Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1064 (Utah 2002).

[32]*Webb v. Univ. of Utah*, 125 P.3d 906, 909 (Utah 2005).

between a bank and its customer or a lender and a borrower.[33]  Therefore, her negligence claim must fail.

E.      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to properly state a claim for the tort of intentional infliction of emotional distress,

a plaintiff must plead facts that demonstrate that the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.[34]

"To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair."[35]

Plaintiff alleges that, "[n]otwithstanding the high likelihood that the transaction [would] be voided, Defendant Country has nonetheless proceeded to foreclose and remove Plaintiff from his property."[36]  Plaintiff alleges that Defendant's actions were so extreme "as to be outrageous and intolerable and offensive to the acceptable standards of decency and morality in the community."[37]  Plaintiff's conclusory allegations, unsupported by any factual averments, do not meet the standard set forth above.  While the foreclosure process is certainly stressful, Plaintiff

---

[33]*State Bank of S. Utah v. Troy Hygro Sys., Inc.*, 894 P.2d 1270, 1275 (Utah Ct. App. 1995); *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990).

[34]*Bennet v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 30 (Utah 2003) (internal quotation marks omitted).

[35]*Franco v. Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 207 (Utah 2001) (citation and internal quotation marks omitted).

[36]Docket No. 1, at ¶ 58.

[37]*Id*. at ¶ 59.

has not sufficiently alleged the kind of outrageous conduct needed to support a claim of intentional infliction of emotional distress.  Therefore, Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law.

F.      WRONGFUL NOTICE OF FORECLOSURE

Plaintiff's Complaint also brings a claim for "wrongful notice of foreclosure."  However, Plaintiff provides no legal basis for this claim and the Court can find none.

G.      INJUNCTIVE RELIEF

As Plaintiff cannot show that she is likely to prevail on the merits of any of her claims, she is not entitled to injunctive relief.[38]  Therefore, Plaintiff's claim for injunctive relief fails.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 2) is GRANTED.  The hearing set for December 10, 2009, is STRICKEN.  The Clerk of the Court is directed to close this case forthwith.

DATED   October 26, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[38]In order for Plaintiffs to be entitled to a preliminary injunction, Plaintiffs must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.  *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).